UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

HUHTAMAKI COMPANY                  )
MANUFACTURING,                     )
                                   )
              Plaintiff            )
                                   )
       v.                          )          1:08-CV-264-JAW
                                   )
CKF, INC.,                         )
                                   )
              Defendant            )

**RECOMMENDED DECISION ON MOTION TO DISMISS
AND ORDER ON ANCILLARY MOTIONS**

The defendant, CKF, Inc., has filed a motion to dismiss this action on the grounds of *forum non conveniens*.  (Doc. No. 14.)  CFK has also requested in another motion that the Court stay the issuance of its scheduling order pending the resolution of the *forum non conveniens* question.  (Doc. No. 15.)  Subsequently, CFK sought with a third motion to introduce certain affidavits for the Court's consideration on the *forum non conveniens* question, after the reply deadline on that motion expired.  (Doc. No. 20.)  The motion to stay issuance of a scheduling order is granted, pending a final disposition on the motion to dismiss.  The motion to introduce additional affidavits is denied.  I recommend that the Court deny the motion to dismiss as well.

**Background**

The plaintiff, Huhtamaki Company Manufacturing, is a corporation organized and existing under the laws of the State of Delaware.  Huhtamaki is a successor in interest to the Keyes Fibre Company.  When it was in existence, the Keyes Fibre Company was a Maine corporation.  (See 1957 Agreement at 1, Doc. No. 14-3.)  The defendant, CKF, Inc., is a Nova

Scotia corporation.  (Compl. ¶¶ 1-2;  Ans. ¶¶ 1-2.)  "CKF" is an acronym for "Canadian Keyes Fibre," a predecessor entity of CKF.  (Id. ¶ 8.[1])  The parties and their respective predecessors have shared a commercial relationship for more than 50 years.  (Id.)  That relationship consists of a licensing agreement whereby Huhtamaki's predecessor authorized CKF's predecessor to exploit certain patents, technical information and trade secrets related to molded pulp products.  (Id. ¶ 11.)  Huhtamaki alleges in this litigation that the parties' relationship was severed in 2007 and that CKF continues, in violation of the parties' prior contractual agreement, to exploit some or all of the intellectual property in question.  (Compl. ¶¶ 9-11, 13-32.)  Huhtamaki seeks damages in excess of $75,000.00 on claims of breach of contract, unjust enrichment, and misappropriation of trade secrets.  (Compl. Counts I, III, IV.)  In addition to damages, Huhtamaki requests injunctive relief "forcing and requiring CKF to comply with all the terms and conditions of the Agreement, as amended, including an injunction prohibiting any use of the New Know-How and prohibiting CKF from sharing any information relating to the New Know-How with any other person or entity."  (Compl. p. 8, Count II "Wherefore" clause.)

Although the parties dispute whether a 1957 licensing agreement between their predecessors remains binding between them, the complaint asserts that it does and I have accepted that basic premise as true for purposes of addressing the motion to dismiss.  The 1957 Agreement includes the following provision:

> 13.   This agreement shall be construed in accordance with the laws of the State of Maine, U.S.A., and each of the parties hereby submits itself to the jurisdiction of the Courts of Maine for the adjudication of all matters arising herefrom. . . .

(Aff. of Robert Patzelt ¶ 10 & Ex. H.)

---

[1]    See also Aff. of Robert Patzelt ¶ 2, Doc. No. 14-2.

2

In 1967, Huhtamaki's predecessor and CKF's predecessor amended the 1957 Agreement in a manner that appears to have no bearing on this *forum non conveniens* dispute.

On October 1, 1975, Huhtamaki's predecessor conveyed to a third-party Canadian corporation (Minas Basin) "in perpetuity the exclusive right to use solely in Canada the Confidential Technical Information and Know-How" that was the subject of the 1957 Agreement with CKF's predecessor, as amended in 1967.  (Id. Ex. I ¶ 1.)  That conveyance, or assignment, specifically excluded intellectual property not yet being used by CKF's predecessor in Canada as of October 1, 1975, by means of the following language:

> 4.    Keyes [Huhtamaki's predecessor] retains all rights and obligations in the [1957/1967] Agreement as pertains to patents, technical information and trade secrets pertaining to molded pulp products as may now or in the future be developed or owned by Keyes and not included in the Confidential Technical Information and Know-How (the "New Know-How") and the Agreement shall, in all respects, remain in full force between Keyes and CKF with respect to the New Know-How.

(Id. Ex. I ¶ 4.)

In 1978, Huhtamaki and CKF's predecessors entered into a new agreement (not an amendment) licensing CKF's predecessor to register and use, in Canada, certain trademarks held by Huhtamaki's predecessor.  (Id. Ex. J.)  Huhtamaki's predecessor sold and assigned these and at least one additional trademark to CKF's predecessor in 1979 and in 1986.  (Id. Ex. K.)

According to Huhtamaki, it terminated the 1957 Agreement on October 22, 2007.  (Decl. of Paul J. Carter ¶ 26, Doc. No. 17-2.)  CKF was the first to commence litigation, in July 2008, filing an action against Huhtamaki in the Supreme Court of Nova Scotia, asserting that "no royalties are payable by CKF to Huhtamaki and no post-termination provisions are available to Huhtamaki or can be applied against CKF under the 1957 Agreement" and that any rights Huhtamaki may once have held under the 1978 trademark agreement were nullified by

3

subsequent agreements and/or dealings.  (Aff. of Robert Patzelt, Ex. M, Amended Statement of Claim ¶¶ 23-24.)  CKF requests declaratory and injunctive relief consistent with these assertions and seeks special damages as well.  (Id. ¶ 29.)

In August 2008, Huhtamaki filed an application with the Ontario Superior Court of Justice, naming CKF as respondent, seeking a declaration that it "is entitled to enter the Canadian marketplace to sell its products with the benefit of a royalty-free license to use any of the Canadian trademarks listed in the [trademark] Agreement."  (Id. Ex. N., Application ¶ 1(a).) Also in August, Huhtamaki commenced the instant civil action against CKF.  Huhtamaki alleges breach of the 1957 Agreement, unjust enrichment, and misappropriation of trade secrets, and requests injunctive relief barring use and dissemination of the New Know-How by CKF, in addition to damages.

Huhtamaki's asserts that it has several important connections to the Maine forum, including the following:

1. That its predecessor developed all of the technical information and trade secrets that are the subject of the 1957 Agreement at its plant in Waterville, Maine, which Huhtamaki still operates.

2. That all technical drawings and specifications regarding its proprietary machines and processes are located in Waterville.

3. That most documents relating to its "New Know-How" exist in Waterville.

4. That many of its witnesses are located in Waterville.

5. That Huhtamaki's Waterville employees have supported CKF's deployment of "New Know-How" in Nova Scotia.

(Decl. of Paul J. Carter ¶¶ 39-44, 48.)

**Motion for Leave to File**

CKF requests leave to introduce expert affidavits that address the legal issue of whether the forum selection clause in the 1957 Agreement is mandatory or permissive.  CKF is not requesting that this Court determine that question, *per se,* but it wants the Court to appreciate that the question is being addressed by the Supreme Court of Nova Scotia and that both parties recognize the "adequacy" of that Court when it comes to determining a question of Maine law.[2] (Mot. for Leave to File at ¶ 8, Doc. No. 20;  Reply Mem. at 2-3, Doc. No. 22.)  The motion is denied.  The affidavits do not materially advance the parties' dispute over the *forum non conveniens* question.  Although Huhtamaki argues that the forum selection clause makes litigation in Maine mandatory, Huhtamaki has not pressed an argument that the Supreme Court of Nova Scotia is in any way "inadequate" when it comes to determining the impact of the forum selection clause or the merits of this commercial dispute.  Additionally, even if the question of the foreign court's "adequacy" were disputed, CKF fails to carry its burden with respect to the other factors that govern the *forum non conveniens* contest, as explained below, which obviates the need to address the adequacy of the foreign court.

**Forum Non Conveniens**

*Forum non conveniens* is a doctrine that permits a district court to dismiss a claim regardless of whether it has jurisdiction over it, provided that there is a forum in another nation that is substantially better suited to resolve the dispute and substantially more convenient for the parties to access.  Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, ___, 127 S. Ct. 1184, 1192 (2007);  Adelson v.  Hananel, 510 F.3d 43, 52 (1st Cir. 2007).  To justify

---

[2]        Obviously, this Court would not rely on expert affidavits to resolve a question of Maine law.

dismissal on the ground of *forum non conveniens*, the party moving for dismissal must meet "the the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency *strongly* favor litigating the claim in the second forum.'" Adelson, 510 F.3d at 52 (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).  Particularly when the plaintiff is a United States citizen seeking to press a claim in a United States forum, there is a "heavy presumption [that] weighs in favor of that plaintiff's initial forum choice." Id. at 53.  To tip the scales forcefully enough to overcome this heavy presumption, the movant needs to demonstrate that the domestic proceeding would be "oppressive" or "vexatious" to it, "out of all proportion to plaintiff's convenience," or that there are significant "administrative and legal problems" associated with proceeding in the domestic forum.  Sinochem Int'l, 127 S. Ct. at 1190.  "The district court should undertake this inquiry mindful that the *forum non conveniens* doctrine's principal purpose is to ensure that trials are convenient, both for the parties and for the court." Mercier v. Sheraton Int'l Inc., 935 F.2d 419, 424 (1st Cir. 1991).

        The parties do not dispute that the Supreme Court of Nova Scotia is fully "adequate" to resolve the legal dispute between the parties.  The only dispute is whether the interests at stake weigh so powerfully in favor of that forum as to justify the dismissal of this action.  My assessment is that the Supreme Court of Nova Scotia offers a more practical and convenient forum, but that CKF's showing is simply not strong enough to support a finding of "oppressive" conditions or any significant administrative or legal problems with proceeding in this forum. This conclusion is based on consideration of certain private and public interests.

### 1. *Private interests*

The private interests of the litigants that must be considered include the relative ease of access to sources of proof;  the availability of compulsory process for attendance of unwilling witnesses;  the cost of obtaining attendance of willing witnesses;  the possibility of a view of the premises, if appropriate to the action;  and any other practical factors that would simplify and reduce the cost of trial or that would call into question the enforceability of a judgment if one is obtained.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

CKF argues that it would be more efficient and convenient for it to litigate this dispute in Nova Scotia because its primary plant and personnel are located in Nova Scotia and because there may be third-party witnesses in Nova Scotia who could not be required to appear in Maine or who would have to be transported to Maine at significant expense.  (Mot. to Dismiss at 13-14.)  Additionally, CKF argues that the Nova Scotia court could more readily conduct a viewing of CKF's premises and procedures.  (Id. at 14.)  I agree with CKF that litigation in this forum imposes inefficiencies and burdens on it that outweigh the convenience that litigation in this forum provides to Huhtamaki, but these burdens are not so great that they could fairly be regarded as oppressive.

CKF also argues that dismissal is appropriate because an action is already pending in Nova Scotia that is the Canadian equivalent of this action, so "[i]f the questions are resolved in Nova Scotia there will be nothing left for this Court to decide."  (Id. at 16.)  This invocation of the doctrine of *res judicata* in the context of a *forum non conveniens* dispute is puzzling.  The decisions cited by CKF are not *forum non conveniens* decisions and, therefore, are not on point. Moreover, "[t]he existence of concurrent litigation is not a relevant factor to the [*forum non conveniens*] analysis."  Adelson, 510 F.3d at 54.  Based on the cases cited, I consider this to be a

request for "Colorado River abstention" that is not sufficiently briefed insofar as it has been shoehorned into a subsection of a *forum non conveniens* memorandum.  See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  Moreover, the effort seems Quixotic, insofar as Colorado River abstention typically involves parallel state proceedings in which the state court has jurisdiction over a *res*. See, e.g., United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007).

 CKF finally argues that there is a practical legal impediment associated with litigation in this forum.  According to CKF, even if Huhtamaki is able to obtain a judgment in its favor against CKF, that judgment will not be enforceable against CKF with respect to its ongoing Canadian operations because a Canadian court will not enforce injunctive remedies awarded by this Court.  (Mot. to Dismiss at 16-17.)  This argument is based on the opinion issued by the Supreme Court of Canada in Pro Swing Inc. v. Elta Golf Inc., 2006 SCC 52.  The opinion reflects that all seven of the justices who participated in the appeal are in agreement that the Canadian common law rule restricting the enforcement of foreign judgments to money judgments should be changed to allow the enforcement of certain equitable remedies issued by foreign courts.  Id. ¶¶ 16, 66.  A majority of those justices, however, concluded that the foreign judgment in question in Pro Swing, a contempt order arising from a consent decree, was not the sort of order that should be enforced.  Of central concern to these justices was their view that, because contempt proceedings in Canada are quasi-criminal in nature, the enforcement of a contempt order issued by a court in the United States becomes a matter of public/penal law in Canada and the common law rule against enforcement of foreign orders intruding upon Canadian "public law" should in no case be abandoned.  Id. ¶¶ 34-39, 62.  The minority agreed that equitable remedies should be enforced in appropriate circumstances and disagreed with the

8

conclusion that enforcement of part of a civil contempt order would amount to the enforcement of a quasi-criminal/penal order.  Id. ¶¶ 86-87, 106-109.

The Pro Swing opinion is certainly something the Court should have in mind in the event that it maintains this action on the docket and comes to find that an injunction should issue against CKF.  However, at least with respect to the private interest factors, I am not persuaded by CKF's argument that the Canadian common law presents a practical impediment that would make CKF's attendance at this proceeding oppressive or otherwise unreasonably burdensome.  Even on the question of enforceability, the Pro Swing opinion strongly suggests that an injunction issued by this Court (and certainly a damages award) would be enforceable in Canada.  Additionally, CKF offers no explanation why declaratory relief on issues of Maine law would not be accorded full faith and credit in Nova Scotia.  Even with respect to injunctive relief, CKF does not argue that an award of injunctive relief in a dispute of this kind would be unavailable to Huhtamaki in an analogous proceeding in Nova Scotia.  In any event, although there is no getting around the fact that there exists some question as to the enforceability of any injunctive relief, the relative concern over the enforceability of *one* of the remedies requested in this action is outweighed by the fact that CKF has consented to litigation in this forum.

As alleged, this litigation arises out of the 1957 Agreement.  For present purposes, that allegation must be treated as true.  In that agreement, CKF, through its predecessor-in-interest, voluntarily agreed to "submit" to the jurisdiction of "the Courts of Maine for the adjudication of all matters arising" from the Agreement.[3]  A forum selection clause is a factor to be weighed in regard to *forum non conveniens*.  Royal Bed & Spring Co. v. Famossul Industria e Comercio de

---

[3]    The parties dispute whether the clause amounts to a mandatory or a permissive forum selection clause. (Opposition Mem. at 6-9, Doc. No. 17;  Reply Mem. at 5-7, Doc. No. 18.)  There is no cause to resolve that question because even a permissive clause would undercut CKF's argument that litigation in this Court is unfair or oppressive to it.

<u>Moveis</u>, 906 F.2d 45, 49 (1st Cir. 1990) (discussing <u>The Bremen v. Zapata Off-Shore Co.</u>, 407

U.S. 1, 8 (1972).  The existence of this clause significantly undercuts CKF's showing in relation

to the private interest factors.  When the forum selection clause is factored in, it cannot be said

that the circumstances strongly favor litigation in the alternate forum.

      *2.  Public interests*

      The public interests that must be considered include the avoidance of a congested forum

remote from the origin of a dispute;  the mercifulness of preventing jurors from having to sit for

a proceeding having no relation to their community;  the related "local interest in having

localized controversies decided at home";  and the interest in sparing the chosen forum from

having to address issues of foreign law.  <u>Gilbert</u>, 330 U.S. at 508-509.

      CKF argues that the public interest factors are conclusive.  It cites <u>Howe v. Godcorp Inv.,</u>

<u>Ltd.</u>, 946 F.2d 944 (1st Cir. 1991).  In <u>Howe</u>, the First Circuit characterized an aspect of the

public interest test as whether "the relation between the chosen forum and the lawsuit [is] so

attenuated that conducting the case in the chosen forum seems an 'imposition' on the court[.]"  <u>Id.</u>

at 947 (quoting <u>Gilbert</u>, 330 U.S. at 507).  CKF insists that this is such a circumstance because

the controversy is entirely over its "right to use patents, technical information and trade secrets

throughout the Dominion of Canada."  (Mot. to Dismiss at 17.)  Huhtamaki responds that there is

a viable relationship between this litigation and the members of this community because many of

the technologies in question were developed in Maine and are still used in Maine in Huhtamaki's

Waterville plant.  (Opposition Mem. at 19-20, Doc. No. 17.)  Additionally, Huhtamaki notes that

this Court's docket is not congested and that this Court is better suited to determining legal issues

arising under Maine law, which governs.  (<u>Id.</u>)

On balance, I conclude that the public interest factors do not weigh heavily in favor of dismissal. Although this litigation does concern CKF's right to exploit certain intellectual property in Canada, the gravamen of the complaint is that CKF has breached a contract that gives rise to reciprocal rights and obligations between parties on either side of the international boundary. Although the alleged violation may occur in Canada, the alleged harm is domestic. Conceptually, there is a balance in this predicament. As for the appropriateness of a proceeding in Maine, in particular, I agree with Huhtamaki that its ongoing connections with Maine and the choice of law and forum selection clauses make this *one* fair and reasonable forum for the parties' dispute, without necessarily determining that the Canadian forum is not available for that exact same purpose. Concurrent litigation is always troublesome due to the risk of inconsistent results, increased expenses, needless duplication of judicial effort, and a host of other factors. And even though I see no practical reason why Huhtamaki cannot fairly litigate its claim in Canada, were I to allow the existence of that Canadian litigation to lead me to recommend that the motion to dismiss be granted, I would be committing the same error as was committed by the trial court in Adelson, 510 F.3d at 53-54, when it found the public and private interest factors to be in equipoise and decided the case is favor of dismissal because of the concurrent litigation. If anything, the facts in this case tilt even more toward denying the motion because of the forum selection clause, even assuming that it is a permissive one. That the parties will now find themselves in three separate lawsuits is largely of their own making and cannot be remedied by the application of the doctrine of *forum non conveniens* to these facts.

**Conclusion**

I RECOMMEND that the Court DENY CKF's Motion to Dismiss (Doc. No. 14.)  The

Motion to Stay (Doc. No. 15) is GRANTED pending the Court's review and disposition of the

Motion to Dismiss.  The Motion for Leave to File (Doc. No. 20) is DENIED.


NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within ten (10) days of being served with a copy
thereof.  A responsive memorandum and any request for oral argument before the
district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 20, 2008

12