UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HUHTAMAKI COMPANY MANUFACTURING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 08-CV-264-B-W |
| CKF, INC., | ) ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO AMEND,
RECOMMENDED DECISION ON RENEWED MOTION TO DISMISS ON
*FORUM NONCONVENIENS* GROUNDS, AND
ORDER ON MOTION TO REINSTATE STAY OF DISCOVERY**

Huhtamaki Company Manufacturing seeks to expand the scope of its complaint to
add additional causes of action related to a 1978 contract that, it alleges, entitles it to
utilize certain trademarks in the Canadian marketplace and prohibits CKF, Inc., from
doing the same.  With its amendment, Huhtamaki would have the Court enjoin CKF from
any further use of the trademarks in Canada and declare that Huhtamaki has "a non-
exclusive royalty free license to use the [trademarks] in Canada." (Proposed Am. Compl.
at 16 & 17, Doc. 32-2.)  CKF opposes the motion to amend, and also renews its motion to
dismiss the case on *forum non conveniens* grounds based on Huhtamaki's effort to expand
the scope of the litigation to include the 1978 contract and trademark issues.  (Docs. 34
& 35.)  CKF also asks the Court to reinstate a stay of discovery pending resolution of
these issues.  (Doc. 33.)  I grant the motion to amend.  I also grant the motion to reinstate
the stay of discovery based on my recommendation that the Court grant the motion to
dismiss.

**Procedural Background**

The parties to this proceeding are successors in interest to a collection of contracts, including a "1957 contract" and a "1978 contract."  In the most basic terms, the contracts pertain to the Canadian defendant's rights to exploit certain technological know-how (the 1957 contract) and to use certain trademarks in the Canadian marketplace (the 1978 contract) related to molded pulp products.  The present-day vitality of these contracts is a matter of dispute.

In August of 2008, Plaintiff Huhtamaki Company Manufacturing, a Delaware entity and successor to a former Maine enterprise[1], brought suit in this forum against Defendant CKF, Inc., a Nova Scotia corporation, alleging that CKF violated the terms of the 1957 contract and, among other things, misappropriated trade secrets.  The 1957 contract includes a provision specifying both that Maine law applies to contractual disputes and that the parties submit to the jurisdiction of the "Courts of Maine" for adjudication of all matters arising from the 1957 contract.  Roughly concurrent with the institution of this civil action, the parties both pursued related litigation in different Canadian provincial forums:  CKF instituted an action in Nova Scotia, prior to the institution of this action, that involves all of the parties' disputes related to the technological know-how and Canadian trademarks, and Huhtamaki instituted a trademark application proceeding in Ontario.  Both the Ontario application (which is no longer active) and the Nova Scotia action sought/seek injunctive and declaratory remedies related to the use of the subject trademarks in Canada and both parties have acknowledged that the 1978 contract is relevant to that dispute.  In the Nova Scotia action, the parties also dispute their respective rights related to the 1957 agreement.

---

[1]     The Keyes Fibre Company.

In September 2008, CKF filed a motion to dismiss on *forum non conveniens* grounds, arguing that the Nova Scotia forum is the most appropriate forum to resolve the parties' dispute and, in particular, to enforce any remedy concerning the use of the intellectual property in Canada.  (Doc. 14.)  In a Report and Recommendation issued in November 2008, I essentially agreed with CKF that the Supreme Court of Nova Scotia was a  better forum in terms of the parties' respective litigation burdens and judicial economy, but I also concluded that CKF was hamstringed in its effort to demonstrate that the relevant factors weighed *heavily* in favor of the Nova Scotia forum because all of the claims in Huhtamaki's original complaint, as alleged, arose from the 1957 contract and that contract included Maine choice-of-law and "forum-selection" clauses.  (Doc. 23.)  The Court agreed with my assessment and adopted the recommendation, over objection, in January of 2009.  (Doc. 27.)

While the forum issue was proceeding here, the Ontario Superior Court of Justice determined at the end of November 2008 that it was appropriate to stay Huhtamaki's trademark application in the Ontario forum to permit the Supreme Court of Nova Scotia to address all of the related disputes raised by the parties in a comprehensive fashion.  (Doc. 34-3.)  The Ontario Superior Court reasoned that, if there exists an avenue for Huhtamaki to obtain a summary disposition concerning its ability to use the contested trademarks in the Canadian market, that summary disposition can as readily be issued by the Supreme Court of Nova Scotia as by the Ontario Superior Court.  (Id. ¶¶ 25-28.)  Additionally, the Ontario Superior Court observed that the Supreme Court of Nova Scotia could also address that question with a more comprehensive understanding of the parties' various contracts and course of dealings.  (Id. ¶¶ 32-33.)

The Nova Scotia Supreme Court (NSSC) also addressed the forum issue in a decision issued in January 2009. (Doc. 50.)  It concluded that Nova Scotia is the most appropriate forum for the combined litigation.  The NSSC concluded that Huhtamaki failed to prove that the "forum-selection" clause in the 1957 contract is an exclusive forum-selection clause under Maine law, but reasoned that, even if it is, it does not control the forum determination because it pertains to only one portion of the overall litigation.  (Id. ¶¶ 62-66.)  Balancing relative convenience, the NSSC observed that essentially all of CKF's witnesses and evidence is in Nova Scotia, whereas Huhtamaki has only a few non-specific "general personnel witnesses" in Maine.  (Id. ¶ 65.)  On the applicable law question, the NSSC observed that the 1978 contract and later contractual documents do not have any choice of law provisions, that the materiality of the 1957 contract is an issue in dispute, and that, "[i]n any event, as demonstrated by the filing of the parties' expert affidavits, any applicable issues of foreign law could be adequately addressed by the Nova Scotia Court."  (Id. ¶¶ 67-68.)  When the NSSC considered the forum question it was the only court in which "all of the issues between all the parties could potentially be resolved in a single proceeding in a single jurisdiction."  (Id. ¶ 73.)  That factor, the NSSC reasoned, meant that the Nova Scotia action was the only action capable of avoiding conflicting decisions from different courts.  (Id. ¶ 76.)  The NSSC also addressed the issue of enforcement, a topic of concern addressed in my prior Report and Recommendation.  Concerning the enforceability on any non-monetary relief granted by this Court, it addressed the Supreme Court of Canada's decision in Pro Swing Inc. v. ELTA Golf Inc., 2006 SCC 52, as follows:

> In the result, a majority of the Court held that a foreign, non-monetary judgment issued in Ohio was not enforceable under Canadian law. At the same time, the majority and minority agreed that there was a need to change the common law preventing the enforcement of foreign, non-money judgments. However, the precise circumstances and legal conditions necessary to apply this change remain unclear. On this basis, there is an issue of enforceability vis-à-vis any non-money judgment obtained by Huhtamaki in Maine.

(Id. ¶ 80.)

In the wake of these decisions by the Canadian courts, Huhtamaki filed the instant motion to amend to add the trademark issues to this litigation. At present, Huhtamaki's own application before the Superior Court of Ontario is stayed (rather than dismissed) pending a determination of predicate legal and factual issues by the Supreme Court of Nova Scotia.

## A.   Motion to Amend

On February 2, 2009, Huhtamaki filed with this Court the pending motion for leave to amend its complaint. (Doc. 32.) The motion is filed within the deadline for amendment of pleadings. The proposed amended complaint adds two counts. In Count V, Huhtamaki alleges that CKF has breached the 1978 Agreement by the manner in which it has used certain trademarks in Canada and by failing to provide Huhtamaki with product samples sold under the marks. (Am. Compl. ¶¶ 92-96.) Huhtamaki maintains that CKF must be enjoined from any further use of the marks and must be made to reassign them to Huhtamaki, along with "the Canadian registrations thereof." (Id. ¶¶ 98, 107.) In Count VI, Huhtamaki challenges the following positions allegedly taken by CKF: that CKF has exclusive ownership rights in the trademarks in Canada and that

Huhtamaki has no right to market products using the trademarks in Canada.[2]  (Id. ¶ 109.)

Huhtamaki requests from this Court a declaration that it has a royalty-free license to use

the trademarks in Canada.  (Id. at 17.)  Huhtamaki demands trial by jury.  (Id.)

      After a responsive pleading has been served, a party may amend his complaint

"only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.

15(a)(2).  "The court should freely give leave when justice so requires."  Id.  In Foman v.

Davis, the Supreme Court instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a
> proper subject of relief, he ought to be afforded an opportunity to test his
> claim on the merits.  In the absence of any apparent or declared reason—
> such as undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of allowance of
> the amendment, futility of amendment, etc.—the leave sought should, as
> the rules require, be "freely given."

371 U.S. 178, 182 (1962).  The motion to amend is the first motion to amend submitted

in this venue and it was filed within the deadline for amendment of pleadings that is set

forth in the Court's scheduling order.  (See Docs. 30, 31, 45.)

      CKF opposes the motion to amend, arguing that Huhtamaki's assertion of claims

arising from the 1978 agreement is in bad faith and is dilatory because Huhtamaki

originally tried to address these questions in the Ontario Superior Court proceeding.

(Obj. to Mot. to Amend at 3-5, Doc. 35.)  CKF also maintains that amendment would be

futile because this Court does not have authority to grant effective relief when it comes to

Canadian trademarks.  (Id. at 7.)  CKF also objects to the motion on the ground that the

amendments would have been highly material to the prior *forum non conveniens* dispute.

In CKF's view, the proposed amendment is *per se* dilatory because it comes after the

---

[2]     See, e.g., Amended Statement of Claim ¶ 29, Doc. 14-4 (requesting such a declaration in the Nova Scotia proceeding).

Court's determination of CKF's motion to dismiss on *forum non conveniens* grounds and after Huhtamaki's loss of forum disputes in the Canadian courts.  (Id. at 5-7.)

I conclude that the amendment is presumptively timely because it falls within the time set in the Scheduling Order for amendment of the pleadings.  I also fail to see a solid basis for a finding of bad faith on this record.[3]  Finally, I am not persuaded that the new counts of the proposed amended complaint are futile claims, even if there is a question whether non-monetary equitable relief granted by this Court can be enforced in Canada as efficiently as similar relief granted by the NSSC.  For example, CKF does not demonstrate that the new counts fail to state claims for which relief might be granted.  Additionally, as the parties both acknowledge, it is plainly the case that these counts all grow out of the same factual matrix and belong together for purposes of efficient administration.  (Pl.'s Reply re. Mot. to Amend at 2, Doc. 37;  Def.'s Objection to Pl.'s Mot. to Amend at 8, Doc. 35.)  I grant the motion to amend for these reasons.

**B.**     ***Forum Non-Conveniens***

CKF maintains that it is appropriate for this Court to undertake a second *forum non conveniens* analysis because of recent developments in both the United States and Canadian legal proceedings that now tip the scales in favor of this Court's dismissal of Huhtamaki's complaint.  The three developments cited by CKF are as follows:  (1) Huhtamaki seeks to amend the complaint to expand this litigation to encompass the 1978 agreement between the parties, which implicates Canadian trademark law; (2)  the Supreme Court of Nova Scotia has issued a decision agreeing with CKF that there are questions of enforceability in Canada of any non-monetary relief granted by a United

---

[3]     Huhtamaki asserts that its effort in the Ontario proceeding was designed to achieve the most expeditious determination concerning its right to use the trademarks in Canada.  (Pl.'s Reply re. Mot. to Amend at 1, Doc. 37.)  I fail to see any evidentiary basis to reject this assertion.

States court; and (3) Huhtamaki has made inconsistent submissions among the two Canadian courts and with this Court, highlighting additional reasons why maintaining this action in Maine will create legal, factual, and administrative burdens. (Renewed Mot. for *Forum Non Conveniens* Dismissal at 2-3, Doc. 34.)

In opposition, Huhtamaki expresses the proposition that law of the case doctrine bars reconsideration of the forum question (Pl.'s Opposition at 3-4) and that the Court's prior rationale for denying the initial motion to dismiss is not impacted at all by the presentation of the new contract claims in Counts V and VI because those claims do not require consideration of Canadian trademark law and do not appreciably increase the burdens imposed on CKF associated with litigation in this forum (id. at 8-9). I begin with Huhtamaki's "law of the case" notion.

According to Huhtamaki, it would be improper to revisit this issue as a matter of law. The cases cited by Huhtamaki did not involve a renewed motion made in the wake of a plaintiff's effort to amend a complaint to press new claims. In fact, two of the cases cited by Huhtamaki do not even reveal that anything had changed between the courts' first consideration of the forum question and their subsequent refusal to reconsider prior rulings. Galaviz v. Bridgestone Corp., No. 3:04-CV-429-B, 2008 WL 4238696, 2008 U.S. Dist. Lexis 71557 (N.D. Tex. Sept. 15, 2008) (declining to revisit *forum non conveniens* issues based on law of the case doctrine and comity issues but not disclosing whether any changed circumstances existed); Kimberly-Clark Corp. v. Continental Cas. Co., No. 3:05-CV-475-D, 2006 WL 2468712, 2006 U.S. Dist. Lexis 63576 (N.D. Tex. Aug. 25, 2006) (refusing to entertain a motion for reconsideration of a *forum non conveniens* decision where the motion for reconsideration merely rehashed prior

arguments).  These decisions out of the Northern District of Texas do not offer any real guidance for present purposes.  The final case cited by Huhtamaki is more noteworthy.  In <u>Prestige Wine & Spirits, Inc. v. Jules Robin, S.A.</u>, the court declined to reconsider a prior ruling that it was "*the* convenient forum," where the foreign defendant argued that it had restructured its distribution system so that there would soon be no additional accounts or other assets that might be reached in satisfaction of a money judgment.  686 F. Supp. 103, 107 (D. Md. 1988) (emphasis added).  Significantly, the court had previously concluded that it was the most appropriate forum in which to resolve the parties' dispute because the locus of the action was within the court's district.  <u>Id.</u> at 106.  With respect to the change of circumstances asserted by the defendant, the court reasoned that the defendant should not be permitted to manipulate the forum question through unilateral action engaged in after the court made an initial determination on jurisdictional and *forum non conveniens* issues.  <u>Id.</u> at 107.

The instant circumstances are unlike those presented in <u>Prestige Wine</u>.  Most significantly, the change of circumstance in this case arises from Huhtamaki's decision to amend its complaint, not from an attempt by CKF to manipulate the forum decision.  Additionally, unlike <u>Prestige Wine</u>, the locus of this action, in terms of both breach and the enforcement of any remedies, is *not* within the District of Maine or within the United States.  Moreover, the original decision in this case was significantly influenced by the fact that Huhtamaki's complaint was restricted to claims arising from the 1957 agreement containing the Maine jurisdictional clause.  Now, the amended complaint expands the scope of the action to disputes arising out of contracts lacking any such clause.  This

changed circumstance directly impacts one of the primary factors that influenced the Court's earlier exercise of discretion on this question.

Law of the case is a discretionary doctrine that does not limit a court's power. Arizona v. California, 460 U.S. 605, 618-19 (1983).  "Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case."  Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) (citing 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[4.1], at 124 n.4 (2d ed. 1993) ("Until entry of judgment, [interlocutory orders] remain subject to change at any time.  The doctrine of law of the case does not limit the power of the court in this respect.")).  Under these circumstances it does not appear feasible that the Court's reconsideration of the forum question could possibly constitute an abuse of discretion.  I therefore proceed with the analysis.

*Forum non conveniens* is a doctrine that permits a district court to dismiss a claim regardless of whether it has jurisdiction over it, "when considerations of convenience, fairness, and judicial economy so warrant."  Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007) (holding that a district court may bypass questions of subject-matter and personal jurisdiction to dismiss on *forum non conveniens* grounds).  To justify dismissal on the ground of *forum non conveniens*, the party moving for dismissal must meet "the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.'"  Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).  "The district court should undertake this inquiry mindful that the *forum non conveniens*

doctrine's principal purpose is to ensure that trials are convenient, both for the parties and for the court." Mercier v. Sheraton Int'l Inc., 935 F.2d 419, 424 (1st Cir. 1991). Convenience and efficiency are to be measured against a "compendium of factors relevant to the private and public interests implicated by the case." Iragorri, 203 F.3d at 12. The defendant's burden is to demonstrate "both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Id. at 12.

> ### 1. *Private interests.*
>
> Considerations relevant to the litigants' private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [and] possibility of view of premises, if view would be appropriate to the action." Evaluating private interests also requires the trial judge to pay heed to "all other practical problems that make trial of a case easy, expeditious and inexpensive."

Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). In my prior Report and Recommendation I concluded that "litigation in this forum imposes inefficiencies and burdens on [CKF] that outweigh the convenience that litigation in this forum provides to Huhtamaki" (R&R at 7, Doc. 23), but I determined that this imbalance did not strongly favor the Nova Scotia forum. Now that the scope of the action is expanded, I conclude that the relevant factors do strongly favor the Nova Scotia forum.

The record supplied with the original motion demonstrates that Huhtamaki will be transporting most of its witnesses wherever litigation proceeds because Huhtamaki is headquartered in Kansas rather than in Maine and Huhtamaki reports having only a few potential witnesses here, what the NSSC described as "general personnel witnesses" rather than specifically identified witnesses. The presence of a few potential witnesses in

11

Maine offers little cost saving or convenience to Huhtamaki in relation to the expense and inconvenience that CKF would suffer if forced to transport all of its witnesses to this forum.  CKF is headquartered in Nova Scotia, where nearly all of its officers reside, and its primary production facility is also in Nova Scotia.   (Patzelt Aff. ¶¶ 8-9, 23, Doc. 14-2.)  Not only does CKF's inconvenience significantly outweigh any convenience that a Maine forum affords to Huhtamaki, but there is a parallel imbalance with respect to access to sources of proof.  Even before the amendment to the complaint, this case was focused on CKF's use of certain technological processes in Canada rather than on Huhtamaki's use of such processes in Maine or any of its other plants.  Now, with the new counts concerning the use of trademarks in Canada, the focus is doubly on CKF's operations in Canada.  Litigation in Canada offers substantially more convenient access to sources of proof respecting the associated processes and commercial practices taking place in Canada, including practical efficiencies related to the compulsory attendance of third party witnesses and potential viewing of premises.

I am also of the view that the presence of the Maine forum-selection clause, or jurisdiction clause, in the 1957 contract should be given less weight with the inclusion of the new counts.  Previously, when the 1957 contract was the focal point of this litigation, it was my view that the forum-selection clause "significantly undercut" CKF's effort to satisfy the private interest test.  (R&R at 10.)  My view was that CKF's agreement to "submit" to the jurisdiction of the "Courts of Maine" for the adjudication of claims arising out of the 1957 contract made it virtually impossible to accept the notion that travel to this jurisdiction for litigation arising from that very contract could fairly be regarded as oppressive.  Now that Huhtamaki is seeking to litigate claims related to the

1978 contract, which does not contain such a clause, it is my view that this earlier justification for denying the *forum non conveniens* motion is similarly undercut.  Upon additional consideration, I am also concerned that the contract clause may have been given slightly too much weight when it comes to a forum contest between this federal district court and the NSSC.

The forum-selection clause is drawn in the following terms:  "each of the parties hereby submits itself to the jurisdiction of the Courts of Maine for the adjudication of all matters arising herefrom."  (Patzelt Aff. Ex. H §13, Doc. 14-3 at 32).  CKF now argues that this language refers exclusively to Maine state courts, whereas the United States District Court for the District of Maine is not a court of Maine.  Arguments of this nature have been favorably received in federal courts, as reflected in the cases cited by CKF. (Renewed Mot. at 5 n.2, citing LFC Lessors, Inc. v. Pacific Sewer Maint. Corp., 739 F.2d 4, 7 (1st Cir. 1984);  Fornaro v. Resource Mgmt. Co., 201 Fed. Appx. 783, 784 (1st Cir. 2006) (not for publication);  Dixon v. TSE Int'l Inc., 330 F.3d 396, 398 (5th Cir. 2003).) Another supportive case is American Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921, 926 (10th Cir. 2005).  But see Stateline Power Corp. v. Kremer, 148 Fed. Appx. 770, 771 (11th Cir. 2005) (not for publication) (finding that reference to "courts of the State of Florida" was ambiguous in relation to inclusion of federal courts situated in Florida).  In my view, the reference to the "Courts of Maine" is a literal and unambiguous reference to the Maine state courts and does not reasonably extend to courts of the United States.  The distinction between the two jurisdictions is clear and of great significance in our federal system of government.  A party drafting a forum-selection clause should immediately recognize the shortcoming of language such as this if the intention is to

include the federal district court geographically situated in the state as an agreed-to
forum, for the United States District Court is not a court "of Maine" even if it is
geographically situated in Maine.

The consequence of this construction is that the forum-selection clause in the
1957 contract has no special significance to a *forum non conveniens* dispute that pits the
United States District Court against the Supreme Court of Nova Scotia.  This is so
because, if the clause is construed as a mandatory election of an exclusive forum, then
either party may only exercise the clause in order to require litigation in the Maine state
courts.  Thus far, neither party has elected to exercise the clause in that fashion.  On the
other hand, if the clause is construed as a permissive clause that does not make the
"Courts of Maine" the exclusive forum, then the clause has no special impact on the
*forum non conveniens* dispute in any event.  The "Courts of Maine" would be only one
permissive forum among potentially many others having jurisdiction over the subject
matter and the parties.[4]

---

[4]       In my view, the forum-selection language at issue in this case is drawn not in terms that clearly
designate the "Courts of Maine" as the exclusive courts to resolve disputes arising from the 1957 contract.
Rather, the clause was drafted in terms that preclude the parties from trying to evade an action commenced
in a court of Maine based on a contention that jurisdiction is not proper (*e.g.*, based on lack of jurisdiction
over the person of the foreign defendant).  Compare De Energia Electrica De P.R. v. Ericsson Inc., 201
F.3d 15, 18-19 (1st Cir. 2000) (finding that language was not mandatory where parties "agree[d] to submit
to the jurisdiction" of the specified courts) with Siva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 386,
388-89 (1st Cir. 2001) (finding that litigation was mandatory in a chosen forum based on contract language
specifying that "all actions involving this agreement must be brought in the State of Illinois"); see also
Summit Packaging Sys. v. Kenyon & Kenyon, 273 F.3d 9, 12-13 (1st Cir. 2001) (finding that the following
language made the designated venues exclusive alternative venues:  "In the event any dispute arises . . . you
agree that the dispute will be submitted to arbitration, and . . . referred to the President of the Association of
the Bar of the City of New York . . . or, if you prefer, submitted to the Courts of the State of New York,"
and describing the latter choice as limited to the state courts); Nelson v. CGU Ins. of Canada, No. 02-193-
B-S, 2003 U.S. Dist. Lexis 5924, *4-6, 2003 WL 1856439, *2 (D. Me. Apr. 10, 2003) (Mag. J.
recommendation, affirmed by Court, that the following language was an exclusive election of forum:
"Issues as to whether or not a claimant is legally entitled to recover damages and as to the amount of such
damages shall be determined . . . by the Supreme Court of Nova Scotia . . .");  Keaty v. Freeport Indonesia,
Inc., 503 F.2d 955, 956-57 (5th Cir. 1974) (per curiam) (describing as non-mandatory a provision stating
that:  "This agreement shall be construed and enforceable according to the law of the State of New York
and the parties submit to the jurisdiction of the courts of New York");  Am. Soda, 428 F.3d at 927

Setting the forum-selection clause aside, I turn to the issue of remedies. I expressed concern in my prior Report and Recommendation that denial of the motion to dismiss might be ill-advised based on an issue as to the enforceability in Canada of any non-monetary relief awarded by this Court. I ultimately reasoned that this particular concern did not strongly tip the balance toward Nova Scotia because the pleas for relief set out in the original complaint all arose from the 1957 contract and appeared to seek, in equal measure, monetary relief. With the addition of the claims arising from the 1978 contract, I am of the opinion that the existence of claims for money damages is of substantially less overall significance. Counts V and VI are predominantly aimed at achieving injunctive remedies and a legal declaration that would, ordinarily, pave the way for Huhtamaki to utilize the subject trademarks in Canada while restricting, or barring, CKF's ability to do the same in the future. Why Huhtamaki would want to litigate these legal questions outside of Canada is not at all clear to me. Indeed, Huhtamaki has already demonstrated its own inclination to press the trademark ownership and licensing issues in Ontario rather than in this forum. As this case is now configured, there will eventually be

---

(considering clear and mandatory contract language to the effect that the state court was "the *exclusive forum* for the resolution of any disputes"). The language used in the subject clause does not contain any clear language of exclusivity. In my view, the law on this question should be stated in a way that requires the draftsperson to use *clear* language in order to make a specific forum the exclusive forum for adjudication of disputes.

Note that the Circuit Courts of Appeals are divided on the question of whether the enforcement of a forum-selection clause is governed by state substantive law or by federal procedural law for purposes of the <u>Erie</u> doctrine and that neither this District nor the First Circuit has yet answered the question. <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1116 n.10 (1st Cir. 1993). I make this point because Justice Cole of the Maine Superior Court has ruled that language of the sort used in the subject forum clause is mandatory and exclusive, though he relies on federal precedent involving, in my view, materially different contract language. <u>Clean Harbors Envtl. Serv. v. James</u>, No. CV06-439, 2006 Me. Super. Lexis 263, *4-5 (Me. Sup. Ct. Dec. 12, 2006). In Justice Cole's view, greatly emphasized by Huhtamaki (Doc. 17 at 7-8), the critical phrase in the clause is the final phrase reading "for the adjudication of all matters arising herefrom." This particular phrase, however, would seem to be implicit in every forum-selection clause because there would be no other purpose for a forum to exercise jurisdiction than for purposes of adjudicating disputes arising from the contract. In any event, I conclude that the Court does not need to resolve the <u>Erie</u> question at this juncture because, even if the clause is mandatory, it can only be exercised to require litigation in a Maine state court and is therefore not determinative of the present dispute.

a need to litigate the question of whether injunctive remedies and declaratory relief ordered by this Court should be given full force and effect by the Canadian courts, if this Court were to reach judgment ahead of the Supreme Court of Nova Scotia. Based on my understanding of the decisional law of Canada, articulated in Pro Swing, Inc. v. ELTA Golf Inc., 2006 SCC 52, Huhtamaki should be able, ultimately, to enforce non-monetary remedies in Canada even if they are issued by this Court. However, it is equally apparent that it will be able to do so only after additional litigation addressed to that issue.[5] (R&R at 8-9.) By comparison, the opinion issued by the Ontario Superior Court reveals that a grant of the requested non-monetary relief by a Canadian court, possibly in the context of a summary judgment proceeding, would effectively and efficiently resolve the trademark application proceeding that is presently stayed in Ontario, in anticipation of a decision by the NSSC. Similarly orderly and efficient process is not likely to result from a plaintiff-favorable order issued by this Court because there is uncertainty related to the enforceability in Canada of non-monetary relief issued by non-Canadian courts. Although it would be a nice development in Canadian law to have an answer to the questions left unresolved by Pro Swing, it cannot be said that taking that route would be remotely convenient or efficient for the parties.

Because there is no dispute as to the adequacy of the NSSC to address all of the claims and provide all of the relief requested in the current civil action, and because litigation in this forum is considerably less efficient and more cost-prohibitive to CKF, and because the NSSC is not appreciably less accessible to Huhtamaki than this particular United States District Court, and because the NSSC is significantly and substantially the

---

[5]    All of the justices of the Supreme Court of Canada opined that equitable remedies awarded in foreign courts might be enforced in Canada in appropriate circumstances, but the case was actually addressed to a contempt order, which was not enforced.

more practical and efficient forum in which Huhtamaki might obtain its predominant

objectives of entering the Canadian market and excluding CKF from the same market

(while also securing the alleged trade secrets and technological know-how related to the

1957 contract), I feel that the private interest factors do tip heavily in favor of the Nova

Scotia forum now that counts V and VI have been folded into this litigation.

### 2.   *Public interests*

> Factors relevant to the public interest include such things as the
> administrative difficulties of docket congestion; the general goal of
> "having localized controversies decided at home," and concomitantly, ease
> of access to the proceedings on the part of interested citizens; the trier's
> relative familiarity with the appropriate rules of decision; and the burdens
> of jury duty.

Iragorri, 203 F.3d at 12 (quoting Gilbert, 330 U.S. at 508-09).

I conclude that the addition of the claims arising from the 1978 contract give this

litigation a decidedly stronger foreign flavor because the locus of the dispute is now

much more clearly in Canada rather than in Maine.  In particular, the dispute over who

may use trademarks in the Canadian marketplace is a matter that is of local interest to the

citizens of Nova Scotia but not to the Maine jury pool.[6]  Also relevant to the public

interest test is the fact that Huhtamaki has itself commenced trademark-related

proceedings in the Ontario Superior Court.  Those proceedings are stayed at present,

pending the outcome of the litigation in Nova Scotia.  Huhtamaki's voluntary

commencement of trademark proceedings in Ontario emphasizes the appropriateness of

avoiding unnecessary docket congestion and redundant court proceedings by leaving the

adjudication of the parties' dispute to the NSSC, which has already asserted its intention

---

[6]      Huhtamaki requests a jury trial in this forum.  A Maine jury's interest in resolving a contractual
dispute between a Delaware entity and a Nova Scotia entity concerning the use of trademarks in the
Canadian marketplace has little "local interest."

of retaining the case and expressed its willingness to address any necessary questions of Maine law.  Although the public interest factors might not be sufficient to independently warrant dismissal on *forum non conveniens* grounds, they are in harmony with the private interest factors that do strongly support dismissal.

**C.      Motion to Reinstate Discovery Stay Order**

CKF requests that the Court halt discovery while it considers the renewed motion to dismiss, arguing that it would be "unjust, inefficient and costly for the parties and the Court to proceed with discovery before the Court has ruled."  (Def.'s Mot. to Reinstate Discovery at 1, Doc. 33.)  Because I have recommended that the Court grant the renewed motion to dismiss on *forum non conveniens* grounds, I grant the motion to reinstate a stay of discovery pending the Court's *de novo* review of that dispositive recommendation.

**Conclusion**

Plaintiff's Motion for Leave to File Amended Complaint (Doc. 32) is GRANTED. The scope of the claims set forth in the amended complaint now mirrors the action currently proceeding in the Nova Scotia Supreme Court.  Because that forum is the substantially more efficient and convenient forum for the adjudication of the parties' dispute, I RECOMMEND that the Court GRANT Defendant's Renewed Motion to Dismiss on *Forum Non Conveniens* Grounds (Doc. 34) and dismiss the amended complaint without prejudice.  Defendant's Motion to Reinstate Discovery Stay Order (Doc. 33) is GRANTED pending the Court's *de novo* determination of the *forum non conveniens* issues.

<u>CERTIFICATE</u>

Any objections to the Orders entered on docket items 32 and 33 shall be filed in accordance with Fed.R.Civ.P. 72.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 28, 2009