UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HUHTAMAKI COMPANY MANUFACTURING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 08-264-B-W |
| CKF, INC., | ) ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

The United States Magistrate Judge filed with the Court on April 28, 2009 her Recommended Decision, *Order on Mot. to Amend, Recommended Decision on Renewed Mot. to Dismiss on* Forum Non Conveniens *Grounds, and Order on Mot. to Resinstate Stay of Disc.* (Docket # 52) (*Second Rec. Dec.*).[1] Huhtamaki Company Manufacturing (Huhtamaki) filed a Motion to Reconsider on May 6, 2009, *Pl.'s Mot. to Reconsider Recommended Decision on CKF's Renewed Mot. to Dismiss on Grounds of* Forum Non Conveniens (Docket # 54), which the Magistrate Judge denied on June 15, 2009. *Order* (Docket # 59) (*Order on Mot. to Reconsider*). Huhtamaki filed its objections to the Recommended Decision on July 2, 2009, *Huhtamaki's Obj. to the Magistrate's Recommended Decision on CKF's Renewed Mot. to Dismiss on Grounds of* Forum Non Conveniens (Docket # 60) (*Pl.'s Obj.*), and CKF, Inc. (CKF) filed its response on July 22, 2009, *Def. CKF, Inc.'s Resp. to Huhtamaki's Obj. to the Magistrate's Recommended Decision on CKF's Renewed Mot. to Dismiss on Grounds of* Forum

---

[1] The Magistrate Judge previously filed a Recommended Decision in this matter on November 20, 2008, *Recommended Decision on Mot. to Dismiss and Order on Ancillary Mots.* (Docket # 23) (*First Rec. Dec.*), which the Court affirmed on January 12, 2009, *Order Affirming the Recommended Decision of the Magistrate Judge* (Docket # 27) (*Order Affirming First Rec. Dec.*).

Non Conveniens (Docket # 64) (*Def.'s Resp.*).   The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in her Recommended Decision, and for the reasons further explained here.

## I.   DISCUSSION[2]

Two issues merit brief discussion.

### A.   Concurrent Litigation

Huhtamaki argues that the Magistrate Judge "substantially relied on the existence of the Nova Scotia action, which is an improper factor in a *forum non conveniens* analysis." *Pl.'s Obj.* at 3-5.   According to Huhtamaki, the Magistrate Judge "committed the exact same error . . . the trial court committed in *Adelson*." *Id.* at 3.

In *Adelson v. Hananel*, 510 F.3d 43, 54 (1st Cir. 2007), the First Circuit reversed a district court's judgment dismissing an action on *forum non conveniens* grounds.   The district court had found the public and private interest factors to be in equipoise, but nevertheless dismissed the matter because of a parallel proceeding in a foreign court. *Id.* at 53-54.   The First Circuit found that the district court erred:

> The existence of concurrent litigation is not a relevant factor to the analysis; none of the [public interest] factors . . . invokes a comparison between the two competing fora.  By focusing on the existence of parallel proceedings in a foreign court, the district court essentially converted the analysis into a determination of which of the two pending cases should go forward.  In so doing, the court erroneously lowered the defendant's burden of proving that the balance of factors justified dismissal of a suit from a U.S. plaintiff's choice of home forum.

*Id.* at 54.

---

[2] The Court has not reiterated the factual and procedural details of the case, which are fully set forth in the Magistrate Judge's two Recommended Decisions and Order denying Huhtamaki's Motion to Reconsider. *First Rec. Dec.*; *Second Rec. Dec.*; *Order on Mot. to Reconsider.*

In the Court's view, Huhtamaki seeks too much from *Adelson*.  In affirming denial of CKF's first motion to dismiss on *forum non conveniens* grounds, the Court distilled the lesson from *Adelson* to be that a district court should not "allow the existence of concurrent litigation to trump the *forum non conveniens* analysis."  *Order Affirming First Rec. Dec.* at 1 n.1.  While the existence of concurrent litigation is not a relevant factor, the Court does not understand *Adelson* to prohibit a district court's consideration of the likely alternative forum when confronted with a *forum non conveniens* question.  Indeed, such an inquiry is fundamental to the required analysis. *See Interface Partners Int'l, Ltd. v. Hananel*, No. 08-1983, 2009 U.S. App. LEXIS 17436, at *7 (1st Cir. Aug. 5, 2009) ("'When a defendant moves for dismissal on *forum non conveniens* grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum.'" (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000))).

The First Circuit's most recent *forum non conveniens* opinion supports this interpretation. *Interface Partners* arose out of the same strained business relationship at issue in *Adelson*, and in *Interface Partners*, the First Circuit affirmed a district court's judgment granting the defendant's motion to dismiss on *forum non conveniens* grounds.  *Id.* at *1, *25-26.  The First Circuit noted that "the instant case is distinguishable from our earlier opinion because we concluded in *Adelson* that the district court impermissibly considered the existence of concurrent litigation in Israel in its *forum non conveniens* analysis, an error the district court did not make here."  *Id.* at *1 n.2.  Nevertheless, in *Interface Partners*, the district court considered Israel as the alternative forum as against the district court in Massachusetts.  *See, e.g.*, *id.* at *24-25 (noting that "the district court did not err in concluding that Israel is the preferable forum given Israel's stronger connection to the instant case").

3

Indeed, a court's failure to adequately evaluate an alternative forum might result in error. The *Interface Partners* Court cited *Mercier v. Sheraton Intl'l, Inc.* (*Mercier III*), 981 F.2d 1345 (1st Cir. 1992).   In *Mercier II*, involving a lawsuit brought in the District of Massachusetts related to events in Turkey, the First Circuit concluded that the district court had misapplied the public interest factor related to docket congestion.   *Id.* at 1348-49.   The *Mercier II* Court concluded that the district court's reliance on the state of its own docket was insufficient, and directed "'a *comparative* determination of where the case can most quickly be resolved.'"   *Id.* at 1357-58 (quoting *Mercier v. Sheraton Int'l, Inc.* (*Mercier II*), 935 F.2d 419, 428-29 (1st Cir. 1991)) (emphasis added in *Mercier III*).   On remand, the district court "relied on [a] caseload [of] statistical reports" and an affidavit "which attest[ed] that a lawsuit of this nature could be heard by the Turkish Court of Commerce in approximately eighteen months" in determining that dismissal was appropriate.   *Id.*   In *Mercier III*, The First Circuit concluded that in this second effort, "the district court's comparative analysis . . . met the mandate" in *Mercier II*.   *Id.*

Here, the alternative forum is Nova Scotia, and it was both appropriate and necessary for the Magistrate Judge to consider whether CKF had shown that Nova Scotia is a superior forum for adjudicating this action than the District of Maine.   The Magistrate Judge did not include the existence of concurrent litigation as a factor in her analysis, and did not, as the district court did in *Adelson*, conclude that the public interest factors weighed in favor of dismissal because there was already a case pending before the Nova Scotia Supreme Court.   *See Second Rec. Dec.* at 18 (recommending that the Court grant CKF's motion "[b]ecause [Nova Scotia] is the substantially more efficient and convenient forum for the adjudication of the parties' dispute").   The Court rejects Huhtamaki's assertion that the Magistrate Judge committed an *Adelson* error.

### B.      Heightened Deference

4

In *Interface Partners*, decided after the Recommended Decision, the First Circuit "note[d] some tension in our case law regarding whether a district court, before conducting the . . . *forum non conveniens* analysis, should accord a plaintiff's choice of a *home* forum 'heightened deference'" or ordinary deference. *See Interface Partners*, No. 08-1983, 2009 U.S. App. LEXIS 17436, at *9-13 (emphasis in original). If the former, a plaintiff should not be deprived of its choice absent a clear showing of either oppressiveness and vexation or evidence that the chosen forum is inappropriate; if the latter, deprivation is proper where an adequate alternative forum exists and the public and private interest factors strongly favor that alternative. *See id.* Because the First Circuit determined that heightened deference was undeserved in *Interface Partners*, it did not reconcile the tension in its caselaw. *Id.* at *10-11.

Although she did not use the terminology, the Court understands the Magistrate Judge to have determined, and the Court agrees, that the ordinary deference standard was satisfied: CKF established that Nova Scotia is an adequate alternative forum and the public and private interest factors strongly favor Nova Scotia. *See Second Rec. Dec.* at 11. Assuming heightened deference generally applies, the Court must first address the threshold question of whether Huhtamaki is owed the presumption.

The *Interface Partners* Court noted that "even if a heightened deference standard were to apply to a plaintiff's choice of a home forum, there is no automatic right to the presumption, and . . . the district court should deny the presumption to plaintiffs acting with a vexatious and oppressive motive." *Id.* at *10. Applying this standard, the First Circuit concluded that the district court did not err in denying heightened deference to the plaintiff because it had engaged in nearly four years of discovery in an Israeli forum, the forum it initially chose, subsequently

moved to dismiss the Israeli suit on the verge of trial, and failed to provide an adequate explanation for its actions. *Id.* at *11-13.

To be clear, here, CKF failed to establish that in bringing suit in the District of Maine, or in amending its Complaint, Huhtamaki had a vexatious or oppressive intent.[3]   Initially, Huhtamaki brought its claims on the 1957 contract in the District of Maine and commenced a separate trademark application in Ontario[4], initiating both proceedings on August 7, 2008.[5] Huhtamaki asserts that the Ontario proceeding was designed to achieve the most expeditious determination concerning its right to use the trademarks in Canada and, as the Magistrate Judge concluded, the Court has no evidentiary basis to reject this assertion. *Second Rec. Dec.* at 7 n. 3.[6]   Huhtamaki's amendment of its Complaint to include its claims related to the 1978 contract was presumptively timely, falling within the Scheduling Order for amendment of the pleadings, and the Court agrees with the Magistrate Judge that the record fails to provide solid basis for bad

---

[3] Nor has CKF established that the District of Maine is "'inappropriate.'"  *See Interface Partners*, No. 08-1983, 2009 U.S. App. LEXIS 17436, at *9 (quoting *Adelson*, 510 F.3d at 53).

[4] According to the Ontario Superior Court of Justice:

> In the Ontario rules, 'application' is a term reserved for a specific type of originating proceeding commenced by notice of application under Rule 14.05 whereas 'action' is commenced by statement of claim under Rule 14.03.  In some jurisdictions the terms motion and application are synonymous but that is no longer so in Ontario.

*Def. CKF, Inc.'s Partial Obj. to the Recommended Decision on Mot. to Dismiss and Order on Ancillary Mots.* (Docket # 25) at Attach. 1, *Endorsement, Huhtamaki Company Manufacturing v. CKF Incorporated*, 08-CV-042295, ¶ 2 n.1 (Docket # 25-2) (*Ontario Endorsement*).

[5] CKF filed its lawsuit in Nova Scotia on July 14, 2008, but Huhtamaki claims that it was unaware of the suit until it was served by CKF on August 11, 2008, several days after it initiated proceedings in Maine and Ontario.  *Opp'n to CKF's Mot. to Dismiss* at 14 n.3 (Docket # 17); *Huhtamaki's Obj. to CKF's Mot. to Reinstate Disc. Stay Order* at 3 (alleging that "[b]efore Huhtamaki had knowledge of the Nova Scotia suit, Huhtamaki brought this suit in Maine regarding the Technology Issue and a separate application in Ontario regarding the Trademark Issue") (Docket # 38) (*Mot. to Reinstate Disc. Stay*).

[6] Huhtamaki elaborated on its motive in its Motion to Reinstate Discovery Stay Order:

> Speed of adjudication, especially of the Trademark Issue, was, and still is, of primary importance to Huhtamaki.  Every day that Huhtamaki is prevented from selling CHINET branded products to its customers in Canada, Huhtamaki suffers loss of sales.  Even more damaging, Huhtamaki faces the potential of losing its customers in Canada forever.  As a result of CKF's threats to sue Huhtamaki's customers, Huhtamaki has chosen to adjudicate the Trademark Issue *before* it makes any CHINET sales into Canada.  For this reason, speed of adjudication is critical to Huhtamaki.

*Mot. to Reinstate Disc. Stay* at 3-4 (emphasis in original).

6

faith. *Id.* at 7. The Court concludes there is insufficient evidence to conclude that Huhtamaki has acted with oppressive or vexatious intent.[7]

Absent an oppressive or vexatious motive, heightened deference may still be withheld if a plaintiff's choice of forum was an exercise in forum-shopping. *Interface Partners*, No. 08-1983, 2009 U.S. App. LEXIS 17436, at *12 n.9. As discussed, the Court has no basis to suspect Huhtamaki's motive in initially pursuing its trademark application in Ontario was other than a genuine desire to attain the most expeditious resolution of the matter. Further, given the relationship between Huhtamaki and Maine, the Court draws the same conclusion as to Huhtamaki's decision to bring its claims related to the 1957 contract in the District of Maine. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.").

The calculus has changed. On November 28, 2008, the Ontario Superior Court of Justice stayed Huhtamaki's application in favor of the comprehensive action initiated by CKF in Nova Scotia, *Ontario Endorsement* ¶ 38, and on January 21, 2009, the Supreme Court of Nova Scotia determined that it was the most appropriate forum to hear CKF's claims against Huhtamaki as to both the technology and the trademark issues. *CKF Inc. v. Huhtamaki Americas, Inc.*, [2009] N.S.J. No. 57 ¶¶ 2, 82 (Docket #'s 50, 50-5). Only at this point did Huhtamaki seek to amend its Complaint in the District of Maine to include the subject matter initially brought in Ontario, now agreeing with CKF that all issues should be resolved in a single jurisdiction. *See Mot. for Leave to File Am. Compl.* ¶¶ 18-20 (Docket # 32).

---

[7] CKF contends that "forcing CKF to continue to litigate a Canadian-based dispute, involving Canadian businesses, Canadian customers, Canadian witnesses, Canadian trademarks, Canadian law and Canadian enforcement issues in Maine would be oppressive and vexatious to CKF out of all proportion to Huhtamaki." *Def.'s Resp.* at 6 n.9. The Court cannot agree. While the public and private interest factors strongly favor litigation of this matter in Nova Scotia, and litigation in Maine is less convenient for CKF than in Nova Scotia, CKF has failed to establish that this inconvenience rises to the level of vexation or oppression.

While amendment was properly granted, and no bad faith is evident, Huhtamaki's recent decision to opt for the District of Maine over the Supreme Court of Nova Scotia to hear its trademark-related claims strikes the Court as an exercise in litigation strategy.  *See Interface Partners*, No. 08-1983, 2009 U.S. App. LEXIS 17436, at *12 n.9.  In effect, Huhtamaki, by its actions, has conveyed that a Canadian court can properly hear its claims, so long as the Canadian court is the one it, not CKF, has chosen.  Huhtamaki failed to adequately explain its change of position and why it is no longer more expeditious for a Canadian court to resolve its trademark-related claims.  Moreover, if it applies at all, heightened deference applies most clearly to a plaintiff's "'*initial* forum choice.'"  *See id.* at *11 n.8 (quoting *Adelson*, 510 F.3d at 53) (emphasis added in *Interface Partners*).  Here, Huhtamaki initially chose both Maine and Ontario, and the Court is dubious whether, once deterred in Ontario, heightened deference should continue to apply to Huhtamaki's reconstituted suit in the District of Maine.

Whether to accord Huhtamaki heightened deference, if it would apply under current First Circuit law, remains a close call.  Nevertheless, the Court determines that Huhtamaki's *volte face* disentitles it from heightened deference, and that Huhtamaki's change of positions has laid bare its underlying forum-shopping motivation.  Having rejected the application of the heightened standard, the Court is left with the ordinary deference standard, and as amply explicated by the Magistrate Judge, CKF has overcome the ordinary deference owed Huhtamaki's choice of home forum and dismissal is appropriate.

## II.    CONCLUSION

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge (Docket # 52) is hereby AFFIRMED.  It is further ORDERED that the CKF's Renewed Motion to Dismiss (Docket # 34) is GRANTED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2009